**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 1-25-cv-22681-CMA**

TK ASSETS, LLC, a Florida limited liability
company, and VELOVITA INC., a Florida
corporation,

       Plaintiffs,

vs.

GREENWAY US, LLC, a Florida limited
liability company, and ECOTRADEMARKET
S.R.O., Prague, the Czech Republic,

       Defendants.

**DEFENDANT ECOTRADEMARKET S.R.O.'s**
**NOTICE OF FILING MAY 18, 2026 HEARING TRANSCRIPT**

Defendant, EcoTradeMarket S.R.O., files the attached transcript of the hearing held on

May 18, 2026, before United States Magistrate Judge Lisette M. Reid, on its objections to Plaintiff

TK Assets, LLC's proposed jurisdictional discovery. The hearing transcript pertains to Defendant

EcoTradeMarket S.R.O.'s Memorandum in Support of its Jurisdictional Discovery Objections

[ECF No. 47].

       Respectfully submitted,

       WEISSMAN & DERVISHI, P.A.

       By:   /s/ *Brian S. Dervishi*
           Brian S. Dervishi
       Fla. Bar No. 350303
       One S.E. Third Avenue, Suite 1700
       Miami, Florida 33131
       305-347-4070 (Telephone)
       bdervishi@wdpalaw.com
       service@wdpalaw.com

       Attorneys for Defendants Greenway US, LLC
       and EcoTradeMarket, S.R.O.

**CERTIFICATE OF SERVICE**

I CERTIFY that on May 22, 2026, the foregoing was served through CM/ECF on the

counsel listed below and via e-mail to Magistrate Judge Reid at the address listed below.

/s/ *Brian S. Dervishi*
Brian S. Dervishi

Ryan D. Schoeb, Esq.
Theodore C. Bilirakis, Esq.
Wood, Smith, Henning & Berman LLP
1501 S. Church Avenue, Suite 200
Tampa, Florida 33629
rschoeb@wshblaw.com
TBilirakis@wshblaw.com
tmarshall@wshblaw.com
rpagquin@wshblaw.com
dgriffith@wshblaw.com

United States Magistrate
Judge Lisette M. Reid
reid@flsd.uscourts.gov
Rocio_IglesiasGonzalez@flsd.uscourts.gov

**THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

**CASE NO.:  25-cv-22681-CMA**

TK ASSETS, LLC, et al.,            )
                                   )
              Plaintiffs,          )        May 18, 2026
                                   )
v.                                 )
                                   )        Pages 1 - 78
GREENWAY US, LLC, et al.,          )
                                   )
              Defendants.          )
_____/

DISCOVERY HEARING

BEFORE THE HONORABLE JUDGE LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

Counsel on behalf of the Plaintiffs:

          WOOD SMITH HENNING AND BERMAN LLP
          1501 S Church Avenue
          Tampa, FL 33629
          BY:  THEODORE C. BILIRAKIS, ESQ.
          BY:   RYAN D. SCHOEB, ESQ.

2

APPEARANCES CONTINUED:

Counsel on behalf of the Defendants:

                    WEISSMAN AND DERVISHI, P.A.
                    1 Southeast 3rd Avenue
                    Suite 1700,
                    Miami, FL 33131
                    BY:  BRIAN S. DERVISHI, ESQ.




Transcribed By:

                    BONNIE JOY LEWIS, R.P.R.
                    7001 SW 13 Street
                    Pembroke Pines, FL  33023
                    954-985-8875
                    caselawreporting@gmail.com

(Thereupon, the following proceeding was held:)

THE COURTROOM DEPUTY:  Good morning.

The United States District Court for the Southern District of Florida is now in session with the Honorable Lisette M. Reid presiding.

THE COURT:  Hi.  Good morning, everyone.

MR. BILIRAKIS:  Good morning, Your Honor.

MR. DERVISHI:  Good morning, Your Honor.

THE COURT:  We are here to discuss some discovery issues.  Let's start with appearances from counsel.  Plaintiff first.

MR. BILIRAKIS:  Your Honor, Theodore Bilirakis on behalf of the Plaintiff and Miss Ruocco is in-house counsel for our client.

THE COURT:  Okay.  Very good.

MR. DERVISHI:  May it please the Court, Your Honor. Brian Dervishi for Ecotrademarkets SRO.

THE COURT:  Very good.

So this is the Defendants' motion.  And I understand that we are limited at this point of the case to jurisdictional discovery and there is a dispute between the parties as to what exactly that means.

I have looked at the redline that you sent to me.  Let me allow you to proceed.  And first, since it is the first hearing that I have had on the case, give me a little

4

background so I can understand what you are seeking.

MR. DERVISHI:  Yes, Your Honor.

In terms of background, there is a pending state court case.  It was filed by the Plaintiff Velovita in November of 2024 between Velovita and Greenway and other parties are now being litigated.  And part of the dispute is over ownership of these assets including this Reserve product.

And I think that is partly why I am so adamant insisting on the limitations are imposed by Chief Judge Altonaga on the discovery limiting it to jurisdiction.  I think part of the agenda is to use discovery in the other case as well.

My obligation today is to serve discovery responses, which we are finalizing.  I have between a six- to twelve-hour time difference with my client depending on his travels whether he is in France or Singapore on business.

But those are being finalizing and we will be serving them.  And just by way of preview we will show that Ecotrade is an entity organized under the laws of the Czech Republic with its principal place of business in Prague.

The dispute here is that it is a trademark claim.  And basically, Plaintiff has this product called Reserve and it keeps you young and looking fresh and young for the rest of your life.

And our client has a product called now Neoreservo.

It has trademark applications pending up in Washington, D.C. filed by Ecotrade and those administrative agencies -- that administrative proceeding is going forward.

The allegation here is that the sale of this Neoreservo product is a violation infringement of the Reserve trademark and that is basically the gist of this case.

And those same allegations are made in the state court case under a state statute alleging unfair competition.  So that is just by way of background.

Judge Altonaga had this case -- Chief Judge Altonaga. I'm sorry -- had this case on freeze for approximately six months because in her experience, in the Court's experience, it takes time to actually effect service on an entity in Prague.

And lo and behold, it did take several months, but when service was finally perfected, she opened up the case again, but instructed the Defendant to say, Ecotrade, if you are going to file a jurisdictional issue, let's find out now who the parties are in front of me.

So she entered the order on jurisdiction and limited it to jurisdictional discovery and states explicitly no merits discovery.  And we set a schedule and we have modified it slightly based on scheduling and other purposes.

So now my discovery is due today.  There will be document production.  There will be interrogatory answers and responses to requests for production.

And the Court instructed us to answer them subject to the objections and whatever report and recommendation, or ruling that you make, on that issue will guide us going forward.

And they will be examining a corporate representative under oath by Zoom on June 3rd.  So I love jurisdiction.

My basic objections are two; one, on the allegations of specific jurisdiction, you know, we are conducting a business activity.  Ecotrade is supposedly conducting a business activity in Florida.

And the claim has to arise from that business activity or Ecotrade committed a tortious act by selling in Florida, the allegation, this Neoreservo product.

So on the discovery that goes to specific jurisdiction, I redlined it to say, well, it is not just our sales in Florida, or our sales of any product in Florida, it has to be limited to sales of Neoreservo, which is the basis of your specific jurisdiction allegation under the Statute 481931.

THE COURT:  So your argument is personal jurisdiction has to be sufficiently related to the specific product being sold in the Southern District of Florida or else there is no jurisdiction.

MR. DERVISHI:  Well, specific jurisdiction.

And that is based on the statute.  Florida's long arm statute, which says the cause of action has to arise from any

of the following acts.

And then they have a fall-back provision is that they allege very conclusory.  I mean, there is no factual allegation.  It is one allegation, a conclusionary allegation, which says Ecotrade and its subsidiary Greenway U.S. are a *alter egos* of each other.

No facts supporting that allegation.  Just the legal conclusion.  It is stated once.  So that is an effort to establish general jurisdiction.  So specific jurisdiction has to tie to activities.  General jurisdiction we are here for any purpose.  So I just --

THE COURT:  So tell me about Greenway.  I want to understand who Greenway is.

MR. DERVISHI:  Greenway --

THE COURT:  And the status of subsidiary and is it selling the Neoreservo product?  What is that?

MR. DERVISHI:  Greenway US LLC is a Florida entity. It is a Florida limited liability company.  I think it is based in Palm Beach.

And Chief Judge Altonaga inquired whether we would be mounting a jurisdictional defense on behalf of Greenway US LLC. And clearly, Greenway is at home in Florida.  It is its domicile.  It is its principal place of business.  It is incorporated.  We are here for any purposes.

There are no sales with Neoreservo product going on

and the interrogatory answers I will be filing will -- and that will be established at the examination.

Until the outcome of the agency proceedings, until the U.S. Trademark and Patent Office signs off on it and deals with the objection asserted in that case by Velovita saying that we don't think that they are entitled to get a registered mark under Neoreservo because it is too close to our mark.

Until those issues are resolved they are not going to be sales of Neoreservo in Florida, or I don't think the U.S., by Greenway or Ecotrade.

So our answers to the interrogatories our forthcoming answers there will be no sales at least by Ecotrade.  But I just wanted to talk briefly, though, about general jurisdiction as well.

And I just thought when -- and you know, I've been in front of Judge Magistrate Judge now retired Goodman.  I have been in front of recently Magistrate Judge Edwin Torres, who I knew as a young associate at Steel Hector many years ago.

And I was not entirely clear of the method with these newer, you know, don't file motions.  Don't file authority, but when I saw the Plaintiff file a case out of the Third DCA, I thought I would give at least the Court the basics here.

We have the *Goodyear* case from the Supreme Court in 2011 and then we have the *Dangler Benz* case in 2014; U.S. Supreme Court Justice Ginsberg decision.

And general jurisdiction, they are trying to establish general jurisdiction under this *alter ego* allegation again which lacks any facts to support it.

And that is why I am mentioning --

THE COURT:  How would they get the facts?

I guess my concern is how would they get the facts if not for discovery?

MR. DERVISHI:  Well, there are two answers to that.

The first is they have been in litigation with Ecotrade and Velovita in Palm Beach -- I'm sorry -- Broward Circuit Court since November of 2024, number one.

Number two, if Ecotrademarket was at home and general jurisdiction -- I mean, it really requires -- it's an exceptional case to bring a corporation that is not domiciled here and that does not have a principal place of business here, or incorporated here.

Those two cases make it clear that you really have to be at home.  And it is not even just the Florida statute that says if you engage in -- the exact wording is systemic and continuous business activity you can be subject to general jurisdiction.  You know all purpose jurisdiction.

But even in *Dangler*, in the *Dangler* decision, it makes it clear even that is not enough.  You need that, but you still have to show they are at home here.

And there is a footnote and you know how Supreme Court

footnotes are.  There is a footnote in the *Dangler* decision which says it is really the exceptional case where you could bring a foreign corporation under general jurisdiction theory.

And all the litigation at the Supreme Court level and elsewhere has been on specific jurisdiction.

So my biggest concern about this discovery, besides it being used for other purposes, is that they are asking for who owns your company?  All of your revenues.  All of your employees.  All of your shareholders.  All of your officers and directors of a company in Prague that has never been in Florida that is not selling in Florida.

And I think that is why I am also insisting -- I objected basically that general jurisdiction discovery based on no allegations really needs to be reined in considerably.

And the *Goodyear* -- I'm sorry.  I think it is the *Goodyear* case, but also the *Dangler* case talks about discussing *Goodyear*.  And *Goodyear*, the Supreme Court said you can't bring a foreign subsidiary of a U.S. company here under general jurisdiction theory.

In *Dangler* the U.S. Supreme Court said you cannot bring the parent company, *Dangler* Germany and claim that somehow because it has a claim against a Mercedes Benz USA *Dangler* is subject to general jurisdiction.

It is the exceptional case.  And what they say in that case, too, is you know, sale of products, which is subject to

part of their discovery is really irrelevant to general jurisdiction.

So I think it is most egregious this discovery in terms of trying to get into everything about Ecotrade. Everything about its relationship. Its ownership. That is my biggest concern.

THE COURT: Okay. So now I see your redlines are all directed to narrowing the scope of each of these requests to the Southern District of Florida.

And I see that those are the things that you have added, but also you are attempting to narrow to Neoreservo or Reserve in the Southern District of Florida.

And my only concern there where you are adding that extra Neoreservo and Reserve is, well, they can make an argument for general jurisdiction purposes that this discovery is within the range of what the rules allow, right?

So that is what I am wanting to hear from you as to also how would they be able to establish whether you are at home here. You may be selling other products within the Southern District of Florida.

You may be doing business otherwise within the Southern District of Florida. Wouldn't that fit into that more general jurisdiction situation?

MR. DERVISHI: Well, according to *Dangler* --

THE COURT: And don't they have the -- why shouldn't

they have the opportunity to do discovery to find that out? Let me put it that way.

Go ahead.

MR. DERVISHI:  In fairness, I have recently litigated a jurisdictional issue and I had that same type of discovery.

And on further study and review of *Dangler* and review of *Goodyear*, I see that those type of, you know, sale of other products really is not relevant to general jurisdiction.

So, again, general jurisdiction is very exceptional to bring a foreign company and say it is at home.  It's at home. That is a requirement.  It is at home here in Florida.

So now the --

THE COURT:  And so I understand, for example, let's look at Goodyear.  Goodyear was about the tires.

So I understand that those tires, the particular tire involved in the accident perhaps was not sold generally in that jurisdiction, but was maybe sold through some other entity, perhaps, or secondary market that some of those tires could end up in that jurisdiction, right?

But what if Goodyear was selling something else in addition to tires they were also selling cars and they were selling cars directly into that market.  And not just a secondary market, but they were selling cars directly there. Would it still have been the same outcome for the other jurisdictional question because they would have been at home.

Maybe not for that particular product, but they are at home.  So that is what I am trying to suss out.

MR. DERVISHI:  Well --

THE COURT:  Your company, if your client's company is generally selling other products in the Southern District of Florida, or has a subsidiary that is a large part of its profit center here in the Southern District of Florida, wouldn't that make them at home?

Well, *Dangler* answers that question and what *Dangler* says in reversing the North Carolina's Court analysis that it omitted the essential difference between case specific and all purpose jurisdiction and it says:

"Although placement into the stream of commerce may bolster an affiliation germane to specific jurisdiction..."

And specific jurisdiction is italicized.

"...we explained in Goodyear such contacts do not warrant a determination that based on those ties the forum has general jurisdiction over a defendant."

It has to be continuous activity and it has to be systemic.

So it has to be Neoreservo for specific jurisdiction because that is the language of the statute.  The cause of action has to arise from the tort or from the business activity.

THE COURT:  Of course.

MR. DERVISHI:  But what the Supreme Court said in --

THE COURT:  But for general jurisdiction what would they need to have?

MR. DERVISHI:  They have to show -- I am quite sure that they would have to show how they phrase it.  They have to show that this --

THE COURT:  Continuous systematic --

MR. DERVISHI:  No, no.  They have to show more than that.  They have to show how they discuss it in *Dangler* and in *Goodyear* is they have to show that this Prague entity is at home in Florida.

And they say systemic and continuous business activity is not enough.  That is a requirement, but you need to show more.

And the analogy is the paradigm for an individual is that he is at home where he resides.  And then, here, for a corporation its at home where it is domiciled or where its principal place of business is.

So you have to almost show a principal place of business even though maybe formally it does not have a location.

And our interrogatory answers that will be served today will show no property we lease.  Ecotrade does not own or lease any property in Florida.  It does not have any employees in Florida.  It only sells in the European market and it sells

on a website that Plaintiffs rely on.  I couldn't even access once I got my IT administrator to allow me to go and find a European website, we still couldn't access it to show that the product was viewable to a Florida resident.

But if a Florida resident somehow purchased this Neoreservo -- and I believe and I'm not positive, but they may be selling it in Europe -- that it could be purchased and sold here and Ecotrade does not have any sales here.

So it is really the exceptional case and I don't want it to be -- that's my concern that this factual allegation, which is there is no factual allegation that somehow gives them the right to get into all of this information that really -- and subject us to the expense and to the time in dealing with this discovery.

THE COURT:  Thank you very much, Mr. Dervishi.

Let me give the Plaintiffs a chance to respond.  Mr. Schoeb, would you be responding?

MR. SCHOEB:  Yes, ma'am.

And I want to go back.  We are here on a discovery hearing.  We are not here arguing the merits of personal jurisdiction.

There will be a hearing on that way down the road, but the Federal Rules of Civil Procedure 26(b)(1) is very broad and in that it says:

"Information within the scope of discovery does not

even need to be admissible to be discoverable."

Anything related to a party's defense, jurisdictional defense that is not privileged, that's discoverable.  That's the way it is.

THE COURT:  But, okay, so let me ask you this specific to this case.  I'm quite comfortable with you limiting with -- Mr. Dervishi?

MR. DERVISHI:  Dervishi.  Thank you, Your Honor.

THE COURT:  Limiting the questions to South Florida or to at least Florida.

What my concern is that if we then limit it to just Neoreservo or Reserve we are talking about this very specific jurisdiction.

MR. SCHOEB:  Sure.

THE COURT:  So general jurisdiction is what we are looking for, correct, or you want to make sure that there is isn't any general or specific jurisdictional ties that you can present to Judge Altonaga when you make your argument, correct?

MR. SCHOEB:  Your Honor, the three areas that we argue is specific, general, which I think should be limited to the State of Florida to be fair.  I think the long arm statute says Florida.

THE COURT:  Florida.

MR. SCHOEB:  And then *alter ego*, which is the relationship between Greenway and Ecotrade.  That relationship

is something that can allow us to gather further discovery to see if Ecotrade is using Greenway as an *alter ego*.

And if they are we are able to get jurisdiction through that path.  And again, this will be briefed up later on.  We are just looking to get the documents so we could go and brief it up for the Court.

THE COURT:  So his argument is, well, you have just made this once broad statement about this Greenway and Ecotrade being somehow related with respect.

Is that enough for you now to go on this expedition to get this information?  What do you have in this connection between Greenway and Ecotrade?  What is in the complaint?

MR. SCHOEB:  Your Honor, in the complaint we talk about how Ecotrade, I believe, we argue is the parent company of Greenway.

I will go back and look right now, but we do not have to include additional allegations.  We are not on a motion to dismiss.  It is a claim of ours that Ecotrade --

THE COURT:  I understand, but there still has to be a certain amount of relevance, right?  And I am just trying to bring that in.

MR. SCHOEB:  Yes, ma'am.

Ecotrade is owned by -- upon information and belief -- Ecotrade is owned by Greenway president and founder Leonid Morgunov.  That's in Paragraph 5.

And so there is some relationship between the two entities.  Both entities are, as Mr. Dervishi said, involved in a lawsuit in South Florida in state court related to other types of products.

I am just going through my complaint real quick, Your Honor.  I apologize.

THE COURT:  So Greenway sells other products in Florida.  Greenway and Ecotrade have the same owner.

MR. SCHOEB:  Correct.

THE COURT:  Okay.

MR. SCHOEB:  Bear with me, Your Honor.  I apologize.

MR. DERVISHI:  Ecotrade is the parent corporation or company that owns Greenway.  Greenway is a subsidiary of Ecotrade.  Mr. Morgunov is not the president of either or the power of those entities.

THE COURT:  Okay.

MR. SCHOEB:  So that relationship, Your Honor, allows us to get to those *alter ego* arguments because our understanding is that Ecotrade may license this product to Greenway and that Greenway then presumably pays Ecotrade money back.

That is our understanding of that relationship and because of that and the *alter ego* arguments, we should be entitled to get into issues related to the relationship between the parties to see how much control there is.

Because as we all know in *alter ego* cases, the question is how much control does the parent have over the subsidiary in order to make it not a separate company?

THE COURT:  Okay.  All right.  So I have the complaint up on my screen.  Walk me through.

Greenway used Ecotrade, a Czech Republic company.  So I am on Paragraph number 5.  Greenway used Ecotrade, a Czech Republic company to file trademark application to avoid liability.

So your allegation is that Ecotrade, while it is a Czech company, is using this Florida company to violate your trademark.

MR. SCHOEB:  Yes.

MR. DERVISHI:  May I comment, Your Honor, on Paragraph 5?  He is actually alleging --

THE COURT:  I'll give you that opportunity --

MR. DERVISHI:  Thank you.

THE COURT:  But I am still trying to make sure that I understand the breadth of Plaintiffs' allegations so that I can make a determination with regard to this.

Is there anything else I should know as I am scrolling through the complaint?

MR. SCHOEB:  Your Honor, as stated, Ecotrade is the parent company of Greenway and because of that we are able to make these *alter ego* arguments.

This is not a motion to dismiss.  This is discovery based on claims of the parties.  We have a claim that there is an *alter ego*.  That is enough at this point to get to discovery about that for the purposes of jurisdiction.

THE COURT:  Okay.  Well, I am trying to make sure that I understand which paragraphs and which aspects.

I hear what you are saying, but so far as I am going through this, I see that you are making the allegations about the attempted trademark application.

Is that all or is there more?

MR. SCHOEB:  Well, Your Honor, it is that Greenway is, we believe, selling these items on behalf of Ecotrade and so Ecotrade is that parent company.

THE COURT:  Okay.

MR. SCHOEB:  Greenway, we believe, is also selling these items.  So there is the relationship there.

And unfortunately, as you noted without more discovery, again, we are just here on jurisdictional discovery, I don't have definitive proof otherwise, but this isn't a motion to dismiss hearing.

The questions can I get discovery on *alter ego* and we have made that claim.  According to 26(b)(1) we can't get discovery on our claims.

And if it turns out that discovery leads to nothing as to an *alter ego*, then that can be dismissed on a motion to

dismiss, but we are entitled to discovery.

THE COURT:  I understand.

Okay.  All right.  Your response, Mr. Dervishi.

MR. DERVISHI:  A brief response, Your Honor.

Number one, the allegation is Greenway used Ecotrade in Paragraph 5.  So now the subsidiary is now controlling the parent.  That is the only factual -- to the extent that is a factual allegation, I don't really think it is.

And my second point is, you know, *Twombly and Iqbal*, however you pronounce that, you know, pleading legal conclusions is not a theory and it doesn't give you a basis to try to take discovery.

And then discovery really on what would be an extraordinary showing that these, you know, this Prague entity now has to defend a lawsuit in the Southern District of Florida.

So I think that to the extent they are allowed discovery on general jurisdiction, it really has to be reined in terms of just intrusively rummaging through all of Greenway and Ecotrade's confidential information about ownership, and dealings, and revenue.

It is similar to, you know, Amazon is an *alter ego* of Jeff Bezos and all of Amazon -- so I get to sue any of Amazon's subsidiaries; Whole Foods, or its web hosting services, or MGM here in Florida because it is an *alter ego* without any factual

basis for that.

THE COURT:  Okay.  So let me ask you this.

Ecotrade is owned by Greenway president and founder Leonid Morgunov, you denied that allegation?

MR. DERVISHI:  Well, yes, I do.

Mr. Morgunov has no involvement with these two entities in the sense that he is not the owner and he is not a president.

Greenway is a limited liability company based in Florida and its manager is disclosed on the Sunbiz website. Ecotrade does own and is the parent of Greenway.  That is true.

THE COURT:  Okay.

MR. DERVISHI:  Greenway LLC.

THE COURT:  So these are related entities?

MR. DERVISHI:  They are related entities.

THE COURT:  Related entities.  And Ecotrade has filed a trademark application for its products?

MR. DERVISHI:  In Washington, D.C. in the United States Patent and Trademark Office.

THE COURT:  Okay.  And this product, Mr. Schoeb, is very similar to a product that your client sells?

MR. SCHOEB:  Correct.

THE COURT:  Okay.  All right.  So now having all that background, let me take a look at the redline and let's talk about it.

So, number one, Mr. Dervishi wants to add regarding marketing and sales in the Southern District of Florida.

Your response, Mr. Schoeb, is that that should not be limited at all or that that can be limited to Florida in general?

MR. SCHOEB:  It could be limited to Florida.

THE COURT:  Okay.  I am in agreement with you on that.

Number two, limited to the State of Florida?

MR. SCHOEB:  Yes.

THE COURT:  Okay.  Number three, regarding operated, conducted, engaged in, or carried on a business venture in this state and the Southern District of Florida.

You would take off and the Southern District of Florida?

MR. SCHOEB:  Well, I don't think it should be limited at all because it says regarding operated, conducted, engaged in, or carried on a business venture in the state.

If Ecotrade and Jenness is an entity in Florida that Ecotrade had some dealings with, if they tried to have dealings with them, if they tried to do anything with them from a business perspective, that is context in the State of Florida and we should be entitled to know it.

So if that business negotiation was not consummated, I don't think that should be dispositive here.  They are still trying to do business in the State of Florida.

THE COURT:  So Jenness, Inc. is a Florida company?

MR. SCHOEB:  Yes, ma'am.

THE COURT:  Okay.  Mr. Dervishi, I think that I am butchering your name.

MR. DERVISHI:  It's okay, Your Honor.

THE COURT:  Can you say it again for me?

MR. DERVISHI:  Dervishi.

I had a general counsel of a bank who would tell his people that there is nothing fishy about Dervishi.

THE COURT:  There you go.  Thank you very much.  I appreciate your forbearance on that.

So if Ecotrade is doing business with a Florida company, all negotiations in between Ecotrade and replace that with Florida company, why does it have to be -- why do you need the additional wording?

MR. DERVISHI:  As long as it relates to in this state, I am fine with it.  As long as it relates to Florida.  Like one and two I think it should be the same.

THE COURT:  Well, it relates to a business with a Florida company that I am assuming, unlike Greenway, they are not related this Jenness, correct?

MR. DERVISHI:  Jenness.  Right.

THE COURT:  So why wouldn't that make them, you know, subject to jurisdiction if they are negotiating in dealings and there is a significant amount of that with a thriving company?

MR. DERVISHI:  Well, Jenness did business or did business until Velovita acquired their assets.

It does business in Thailand, in Malaysia, in China, in Australia, and Latin America.  It does business around the world.

So if a Prague entity is negotiating with a Florida based entity about distribution of products in Thailand, you know, it really is not relevant to, I don't think -- I certainly don't think it comes close to establishing general jurisdiction in Florida, but I just thought that it would have some relationship to Florida.

THE COURT:  I see.

Okay.  Mr. Schoeb, how do you think we should narrow that, then --

MR. SCHOEB:  Judge, I --

THE COURT:  -- so that it is connected?  Go ahead.

MR. SCHOEB:  Well, I think dealings with companies in Florida, itself, may lead to general jurisdiction.

If there is something wholly unrelated to Florida within those dealings, I would I guess agree to carving that out.  But the dealings that you have with Jenness was to buy trademarks for products all over the world.  Including in Florida.

And I know this because the other case deals with those products.  So I just don't see how there is a way to

actually carve that out unless it is like --

THE COURT:  I see.

MR. SCHOEB:  -- something specific to they are going to Malaysia or something like that.  I think the remainder of that, though, is probably relevant because it deals with trademarks everywhere.

THE COURT:  Okay.  So because of the type of business it is limiting it to operated, conducted, engaged in, doesn't really work.

MR. SCHOEB:  Right.

THE COURT:  Okay.  This is discovery, Mr. Dervishi.

I think this is a valid argument.  If we find when that, at the end of the day, that this does not lead to general or specific jurisdiction, that is an argument for Judge Altonaga, correct?

MR. DERVISHI:  Correct, Your Honor.

THE COURT:  And I wonder if there is a protective order between the parties here if there is some information that comes out that might somehow create a problem for Ecotrade?

MR. DERVISHI:  Not in this case, but we would be happy to do that in this case.

THE COURT:  Okay.  I think that would cover it.

I mean, I understand if Ecotrade is negotiating to purchase some trademark that they may not want that out there

in the public domain.

But, as far as this case, it seems to be relevant.  So I will rule that the rest of the -- all of the redline on number three should be stricken.

Number four all of the contacts with the State of Florida regarding the marketing and sale of Neoreservo with the Southern District of Florida.

So I think, Mr. Dervishi, all of your contacts with the State of Florida would go to a potential argument that the company is at home here.

I understand that this could be very broad, however, your contacts in Florida.  Especially it sounds like you are also having dealings with other Florida companies.

Tell me your concerns on number four, Mr. Dervishi.

MR. DERVISHI:  Well, I interpreted that, Your Honor, and I do really object to it on the basis of general jurisdiction.

I interpreted that as an allegation regarding specific jurisdiction which I think is their only viable theory of jurisdiction and I tried to tie it to the product.

And that is my concern that besides, you know, not having any factual predicate for the discovery on general jurisdiction, it should not be the camel's nose under the tent to get in and under and gets discovery that otherwise wouldn't be available to them on a theory of specific jurisdiction.

I think the general jurisdiction allegation almost borders on the frivolous.  That is my concern.

So if there is another product that is sold, it is really not relevant to, I don't think, general jurisdiction and I tried to tie it down to the Neoreservo or the Reserve.  That is the basis of the case.  That is the only factual allegations in the complaint.

THE COURT:  Okay.  Let's go to Mr. Schoeb.

MR. SCHOEB:  Your Honor, if Mr. Dervishi really thinks it is frivolous, I will expect him to file motions just saying that in court.

This is a general jurisdiction allegation.  We just talked about general jurisdiction.  It is not limited to just one product.  It is whether your contacts are in Florida.  Are you selling other products in Florida.

And even through 4-A through 4-N, we lay out specific items as well.  And so from our perspective because this is a general jurisdiction allegation in the complaint, it should not be limited to Neoreservo or the Southern District of Florida.

I believe that is pretty much all the edits in relation to these 4-A to 4-N is about Neoreservo and Southern Florida.  We would object and ask Your Honor to rule consistent with your prior rulings.

I do see there is 4-B there is some additional language and 4-F and we are not agreeable to either of those.

One thing I would note is that in 4-B there are contracts that I believe Ecotrade entered to in the State of Florida.  Ecotrade is also actively prosecuting a case in Broward County, which is in the Southern District of Florida.

So I think that that is certainly relevant.  With 4-F we are not agreeable to definition included by the Plaintiff. This is our discovery request and I am not able to add a definition to it.

THE COURT:  Okay.

MR. DERVISHI:  Brief response, Your Honor?

THE COURT:  So B, of course, that is fine excluding lawyers for litigation.  That would be attorney/client privileged anyway.

B it substantial and not isolated activity within the state of the Southern District of Florida.

I mean, that is really very hard to define and I don't think that it would actually work to put in that kind of language.  I think that is the language that the Court, that Judge Altonaga will decide, whether these contracts that Ecotrade may have involve substantial and isolated activity. That is actually the legal test.

My biggest concern is the all your contacts.  I am not sure how clear that is, but that does not seem to be what the parties are discussing.  They are more concerned about whether it should be limited to Neoreservo.

I think general jurisdiction means that it should not be and we can take that out.  Let me see.  F, all revenue generated or received by you directly or indirectly by sales to consumers within the State of Florida.

So I need to understand why that parentheses defined a sales by your distributors is something that you want to add, Mr. Dervishi.

MR. DERVISHI:  Fine, Your Honor.

And before I move on, I just want to indicate that the case that -- the statement that Ecotrade is prosecuting a case in Broward, Ecotrade was sued and it filed a compulsory counterclaim and a third party complaint arising from these allegations.

And predecessor counsel chose not to raise jurisdiction and that is -- but it is not like Ecotrade went in and filed the lawsuit in Broward.

My only concern about indirectly is -- and as defined as sales by your distributors, I meant to somehow define what indirectly means.

Because, again, sales by Greenway it is not relevant to this inquiry.  So that was my concern if this is sort of going to be an attempt to try to say, well, we impute to you all sales by your subsidiary.

THE COURT:  But you is defined in this document as you and Greenway; as Ecotrade and Greenway?

MR. DERVISHI:  Actually, I don't know that off the top of my head.

MR. SCHOEB:  Hold on, Your Honor.  I have it in front of me.  Bear with me, Your Honor.

I believe you is subsidiaries to that includes (inaudible).  And we have, of course, pled an *alter ego* that has not been dismissed at this point by the Court.

And so from our perspective, this falls squarely within that because indirectly would be Greenway the *alter ego* of Ecotrade selling items.

MR. DERVISHI:  Now we are into merits discovery, Your Honor, and they haven't pled anything.

I mean, ultimately, Your Honor, if Your Honor's ruling that the sole conclusory allegation in Paragraph 5 entitles them to take discovery on the relationship under a general jurisdiction theory, then I understand and my attempt to limit it to Neoreservo or Reserve are overruled.

But to the extent that the inquiry goes to general jurisdiction, but I don't believe that they are entitled to get discovery on our subsidiary when it is Ecotrade is the party.

THE COURT:  Okay.  So you throughout this RFP or it means that you and Ecotrade and its subsidiaries throughout the entire document?

MR. SCHOEB:  Yes, ma'am.

THE COURT:  Okay.

MR. SCHOEB:  And I think we are on the area of inquiry I am pretty sure that is what this says.

THE COURT:  Okay.  So when you say all your contacts with the State of Florida in number 4, you mean Ecotrade and Greenway?

MR. SCHOEB:  If Greenway is the subsidiary of them, again, that is the *alter ego* argument.

THE COURT:  You have not sent separate discovery to Greenway?

MR. SCHOEB:  No.  Because Greenway is not pursuing a jurisdictional argument.  This is just jurisdictional discovery.

THE COURT:  Understood.  So Greenway is a Defendant, certainly.

MR. SCHOEB:  Right.

THE COURT:  And once we are not doing jurisdictional discovery, you would have the opportunity to go forward and get that information.

So I understand, Mr. Dervishi, you are arguing, well, they are asking for it now when the Judge has said we are only talking about jurisdictional.

And Mr. Schoeb is saying, well, we made an *alter ego* allegation so this is jurisdictional.

MR. DERVISHI:  You have to show contacts.  And again, all it has to do is be discovery regarding any claim or

defense.

MR. DERVISHI:  And again, you know, I made my argument that there is no *alter ego* allegation here other than a conclusion.  It does not satisfy the pleading requirements and it --

THE COURT:  Well --

MR. DERVISHI:  And this goes into --

THE COURT:  Can I say that the conclusion seems to be based on a trademark application.  It is not just a bald allegation in number 5.

It is a fact that there has been a -- it is a fact alleged that there has been an application for the trademark to sell a related product.  A product that is related to this Plaintiff.

Am I correct about that, Mr. Schoeb?

MR. SCHOEB:  Yes.  And that trademark is to sell those products in Florida and the United States.

THE COURT:  Right.  So it is not just an allegation purely an allegation of an *alter ego*, Mr. Dervishi.

It is a factual allegation.  The *alter ego* conclusion is, as you say, it is conclusory, but it is based on a factual allegation that goes to the heart of this litigation.

MR. DERVISHI:  Well, and I know in terms of background we went into it quite a bit of jurisdiction.  But, again, *Dangler* says the placement of product -- *Dangler* and Goodyear

say the placement of product into the stream of commerce made bolster affiliation germane to specific jurisdiction.

THE COURT:  Well, it becomes specific if, in fact, Greenway is an *alter ego*.  It would become specific, correct?

MR. DERVISHI:  No.  If Greenway --

THE COURT:  No.

MR. DERVISHI:  Well, I think this is merits discovery regarding Greenway sales.

THE COURT:  I understand.

MR. DERVISHI:  And it is all of Greenway sales.

And I think also it is going to be used in the other case as well.  I do have a draft of a confidentiality order, which I will provide later today.

THE COURT:  Okay.

MR. DERVISHI:  But I believe that we are now entering into merits discovery where the Supreme Court has clearly rejected the notion that, you know, placing a product into the stream of commerce and revenue from it is somehow a basis for general jurisdiction, I think that this is going beyond and it is discovery that they are not entitled to.

THE COURT:  I hear your argument.

I appreciate that, but in my mind what I would see is it is the very product that is the subject of this litigation.

MR. DERVISHI:  Well, it --

THE COURT:  And that is what makes it a little

different from *Dangler*.

MR. DERVISHI:  It is all revenue.  It is all products.

So it is not even just Neoreservo.  I mean, that limitation, I argued for that limitation, but it is all products.

And if it is limited to Neoreservo that would at least give us some protection on it without prejudice to them if they are able to establish, or when they take merits discovery and they want to find out what sales have occurred, but I don't even think they would get it in merits discovery of the --

MR. SCHOEB:  You're talking --

MR. DERVISHI:  I'm sorry.  Neoreservo sales.

MR. SCHOEB:  We probably wouldn't because this is not merits discovery.  This is jurisdictional discovery.

In merits in a case the revenue and the product sales for other products are not necessarily relevant, but for the purposes of general jurisdiction they are.

MR. DERVISHI:  But --

MR. SCHOEB:  So that is the problem that we have.

MR. DERVISHI:  But not by subsidiary.  Not by a different --

THE COURT:  Right.  I understand, Mr. Dervishi, but in this case the allegation does have some -- it is not just conclusory.  There are facts related to this litigation and that is what I think sets it aside from *Dangler*.

Okay.  So if we are looking at number 4, all your contacts regarding the marketing and sale of Neoreservo, I am going to limit -- take out that limitation, but it would be regarding the marketing and sales in Florida since your formation.

MR. DERVISHI:  Well, Your Honor --

THE COURT:  Correct, Mr. Schoeb?

MR. SCHOEB:  No.  That is what Mr. Dervishi has asked it to be limited to his marketing and sales, but they've got other business contacts in Florida outside of just marketing and sales.

Like, they own a piece of land.  I think Mr. Dervishi said they don't, but I don't know that.

THE COURT:  Oh, really?  Okay.

MR. SCHOEB:  Like, there are other things that could be contacts in Florida outside of just marketing and sales.

THE COURT:  That would make them at home here?

MR. SCHOEB:  Correct.

THE COURT:  Okay.  So if we take out that -- we need to take out that provision entirely.

MR. SCHOEB:  Yes.

THE COURT:  All right.  Okay.  I would agree with that.

And A, we would take out and make that limitation the entire State of Florida rather than the district.  In B, we

would make that involve the entire State of Florida and the excluding lawyers from litigation should remain because that would be privileged anyway.

Following all Southern District of Florida and exclude -- okay.  So your argument is it should be for following all should be just Florida.

MR. SCHOEB:  State of Florida and exclude lawyers for litigation.  Obviously, we should ask the corporate rep about, you know, litigation in Florida like you have litigation, but attorney/client privilege information, we are not going to be asking.

THE COURT:  That's fine.

All revenue generated or received by you directly or indirectly by sales to consumers within the State of Florida means by you and your subsidiaries.

MR. SCHOEB:  Correct.

THE COURT:  Let me just say that I feel very comfortable with you and Greenway since you have alleged certain specific facts about Greenway.

Are there other subsidiaries?

MR. SCHOEB:  Not that I know of, Your Honor.

I think we have discovery related to that pending. And so if you are going to limit it to Greenway and Ecotrade, I would ask if there is another company that pops up somehow that we would be allowed to come back, potentially.

THE COURT:  Okay.  I would agree with that if there is some other company that comes up.

But right now I feel very comfortable with you.  Meaning you and Greenway.

MR. SCHOEB:  That's fine.  With the caveat about coming back.  Thank you.

THE COURT:  You know that that is always open in coming back.

All your direct communications with consumers within the State of Florida.  I think we can take out regarding Neoreservo and Reserve in all the remaining four.

MR. DERVISHI:  Judge, just going back just to the prior, I want to make sure of my objection.

I don't think revenue of a subsidiary establishes general jurisdiction or *alter ego* of a parent.  I just want to make sure that I preserved that objection.

THE COURT:  I understand.  I understand.  You have preserved it.

Number 5, no testimony in substance of lawsuit.  I think that is very fair.

MR. SCHOEB:  Your Honor, I would say outside of activities related to personal jurisdiction.  And so what I mean by that is that Ecotrade is litigating and Mr. Dervishi was actually incorrect.  We never sued Ecotrade in the underlying case.

Ecotrade inserted itself in that lawsuit.  And so things rolled into personal jurisdiction from that lawsuit like you entered into the lawsuit yourself.  You see that there are a party and further what the contacts are that are relative to that lawsuit I think are relevant.

The allegations of the lawsuit related to other items and that is related to trademarks unrelated to Neoreservo or Reserve, you know, revenue is from other either and those might not be relevant necessarily.

THE COURT:  Right.  I guess he has added no testimony in substance of lawsuit.  I am not sure what that means.

MR. SCHOEB:  I don't know either.

I am trying to do my best to narrow it a little bit. But, you know, they inserted themselves into litigation in the State of Florida and I should be able to ask them about that. I am fairly certain that that probably confers general jurisdiction anyway.

THE COURT:  Right.  I mean, you could certainly ask about it.  You could make that argument to Judge Altonaga.

I just do not know what that redline means there.  So I would take it out.  If it means that you are asking them to disclose something that is privileged, they will just assert the attorney/client privilege.

MR. SCHOEB:  And I will not ask that, of course.

THE COURT:  Okay.

MR. DERVISHI:  And Judge, I do stand corrected.

Mr. Schoeb is correct.  I just checked it again.  His initial lawsuit was only against Greenway.  And Ecotrade, by my prior counsel, was added in on a counterclaim.

THE COURT:  Okay.  All right.  So we are on number 6 regarding marketing and sale of Neoreservo in the Southern District of Florida.  So we could take that out.

MR. DERVISHI:  And owners, you know, all travel information including passports, stamps, and ticket receipts for you, including, but not limited to your owners.

THE COURT:  To Florida in the last five years.

Now it would not be relevant, Mr. Schoeb, if they claim they came on vacation.  Wouldn't this have to be relevant to some business purpose?

MR. SCHOEB:  Your Honor, I am more than happy -- so my understanding is the owners live in Russia.  So they are probably not coming to the United States anyway.  I am happy to put an exclusion there for vacations.  I agree it should be business related.

MR. DERVISHI:  And that statement is not correct about ownership, Your Honor, but --

THE COURT:  So let's agree on some language for business activity perhaps to Florida in the last five years for activity related to business or for business activity.

MR. SCHOEB:  I think business activities is fine.

THE COURT:  Okay.  But we can take out regarding marketing and sale of Neoreservo or Reserve and its business in Florida or a substantial and not isolated just say the word more business activity.

Number 7, all web traffic data for new websites operated, controlled, paid for, or used for the benefit of you regarding the marketing and sales of Neoreservo, including those to users in the State of Florida and the purpose for the visit.

I don't know about this web traffic data.

MR. DERVISHI:  Your Honor, if I may?

THE COURT:  What is this exactly, Mr. Schoeb?

MR. SCHOEB:  Yeah, so they sell products on on-line through a website.

THE COURT:  Okay.

MR. SCHOEB:  And so they want to know how much of the traffic is coming from Florida.  Is there communications between them and people in the State of Florida of products sold into Florida.

And so I think that that web traffic, which is specifically limited to people in Florida, is appropriate.

MR. DERVISHI:  The website is based in -- its for sales overseas.  It is based in European Union sales is where Ecotrade sells product and I couldn't even access it.

So I didn't even know that it was accessible here in

Florida.  So it is not like we have a website and we are making sales in Florida.  And again --

THE COURT:  So, then, I guess you could take out regarding the marketing and sale of Neoreservo and Reserve, but you are only asked to include those accessible to users in the State of Florida.

MR. SCHOEB:  And if the answer is no, I will live with the answer, but that's all we are asking.

THE COURT:  Okay.  So it is very broad the way it is stated now, but it then says including those, but what you really want are all web traffic data for any websites operated, controlled, or used for the benefit of you accessible to users in the State of Florida.

MR. SCHOEB:  Sure.  We can make that modification.

THE COURT:  Okay.

MR. DEVISHI:  And again, all of this now involves Greenway as well?

THE COURT:  Yes.

Number 10, the percentage of revenue of any product being sold by you direct or indirectly in Florida.

MR. SCHOEB:  Which one are you on, Your Honor?

THE COURT:  Number 10.

MR. SCHOEB:  Oh, I think they tried to strike number 8 entirely.

THE COURT:  Oh, did I miss something?

Oh, yes, we missed -- the history, ownership, control, financing, and operation of any website through which your products, included but not limited to Neoreservo and Reserve are marketed and sold and shipped from the State of Florida.

Now why wouldn't this be appropriate?  It is directed right to the product, Mr. Dervishi?

MR. DERVISHI:  Including but not limited to language. They are looking for all --

THE COURT:  Oh, I see.

MR. DERVISHI:  -- by Greenway and by Ecotrade.

THE COURT:  So they are basically looking for sales into the State of Florida.  Including these two products.

MR. SCHOEB:  Correct.

THE COURT:  Why wouldn't that be appropriate for jurisdictional purposes?

MR. DERVISHI:  If it relates only to Ecotrade, I do believe it is relevant, but they included -- including but not limited to is broader than that.

And again, Your Honor, they are separate entities. They are separate corporations.  They have separate identities. Ecotrade should not be obligated whether it even has the ability to get and produce information regarding its subsidiary of Greenway.  This should just be limited to Ecotrade.

THE COURT:  Okay.  But Greenway sells products --

MR. DERVISHI:  Yes, Your Honor.

THE COURT:  -- in Florida?

MR. DERVISHI:  Yes.

THE COURT:  Okay.  And that is what it does, it sells products.  Other than this (inaudible) as far as you know they do not sell the Neoreservo or Reserve that they sell products in Florida.

MR. DERVISHI:  Correct, Your Honor.

THE COURT:  Okay.  I do see that as appropriate in this case based on the allegations in the complaint.

So number 8 is an appropriate jurisdictional request.

Number 10, the percentage of revenue relating to any product being sold by you directly or indirectly through a Ecotrade member.

What is an Ecotrade member?  So subsidiaries are members of Ecotrade?  Because now it --

MR. DERVISHI:  This is Amway.  This is multilevel marketing.  So they enlist individuals to sell these products who then enlist other individuals who, then, you know, this whole multilevel marketing world.

And the people -- the individuals who are selling it to their friends and family are basically referred to as members or distributors.

THE COURT:  I see.  Excluding Greenway.  So why would you add that provision?

MR. DERVISHI:  Well, if there is an Ecotrade member

selling in Florida, I think that arguably is relevant.  To get into the percentage of sales by the subsidiary, I think we are getting into the merits discovery.

And assuming that they can assert jurisdiction and persuade the Chief Judge that there is jurisdiction that exists they are not -- at that point we have the local Rule 16 and local Rule 26 conference and the parties exchange discovery.

They are not precluded from getting it down the road, but I think Ecotrade should be the venue or the conduit for the discovery as I have, maybe repetitiously, for which I apologize.

THE COURT:  This is the same argument.

Okay.  I just didn't know what a member was.  I did not realize that this was multilevel marketing.

MR. DERVISHI:  And I objected to this based on it being merits discovery as well.

THE COURT:  Okay.  I see.  For the same reasons I believe this is relevant to jurisdiction.

If there is a percentage of revenue that is relatively low, I am sure you, Mr. Dervishi, will make an argument that there is no jurisdiction if it is, you know, fifty percent --

MR. DERVISHI:  Well, whatever the sales are --

THE COURT:   -- in Florida.

MR. DERVISHI:  Sorry to interrupt you, Your Honor.

THE COURT:  I'm sorry.  Go ahead.

MR. DERVISHI: Whatever the sales are of Greenway are irrelevant to Ecotrade being here. And if the percentage of Greenway sales -- it's not even -- I mean, Greenway is based here in Florida. I don't know why or --

THE COURT: Okay.

MR. SCHOEB: -- how this even makes sense.

THE COURT: I understand it.

Okay. I see. All right. It's the same ruling with respect to Greenway.

Number 11, the percentage of revenue relating to the sale of any product bearing the marks Neoreservo or Reserve.

MR. SCHOEB: We are fine with that, I think, Your Honor.

THE COURT: Okay. Because that is where revenue would come from, sales.

MR. SCHOEB: Correct.

THE COURT: Number 12 residing in Florida for the last two years rather than five; two years rather than five.

Okay. Tell me about that.

MR. SCHOEB: We'll agree to three years. We will limit it to three.

THE COURT: Compromised to three, Mr. Dervishi?

MR. DERVISHI: To expedite this and move this along? Sure, Your Honor. Preserving all of my other objections without waiving any of my objections.

THE COURT:  Okay.  You can give where you can.

Okay.  Number 14, it should be --

MR. SCHOEB:  I think 13.

THE COURT:  13?

MR. SCHOEB:  Yes.  It's the same two years versus five.  We will agree to three years.

THE COURT:  Okay.  Yes.  I assume 12 and 13 would be the same response?

MR. SCHOEB:  Yes, ma'am.

THE COURT:  Number 14, your relationship and any contract with Greenway related to any license or rights that you used Neoreservo or Reserve.  Period.  Right.  I mean, that is what this lawsuit is about.

MR. DERVISHI:  How that relates to jurisdiction I don't know.

THE COURT:  Well, because that is the Plaintiff's product is the allegation.

And the allegation is there is something between these two companies that make it an *alter ego*, I think they have to be able to establish -- I see.

Okay.  You are saying, well, if it isn't in Florida, then maybe the lawsuit should be filed somewhere else, but the Plaintiff is here and the product is being sold here.  So that it should be in Florida.

MR. DERVISHI:  Understood, Your Honor.  In Florida is

fine, Your Honor.

MR. SCHOEB: But this, I think, actually goes beyond that because we have a theory of *alter ego*. And so if there is a contract between Greenway US and Ecotrade relating to the license for use of (inaudible) that I still think is jurisdictional discovery that does not necessarily need to being based solely in Florida.

Those contracts would be relevant for these purposes of showing that it is an *alter ego*.

THE COURT: Because Greenway is a Florida company. So then you are really a Florida company.

MR. SCHOEB: Right.

THE COURT: I understand. The same argument.

So we will take out in the Southern District of Florida and just leave the request as it is because, Mr. Dervishi, we are limiting it to Neoreservo and Reserve and Greenway of Florida company.

MR. DERVISHI: I don't believe there is a contract.

Even if there was a contract for a theory of *alter ego* and I haven't pled any theory other than the one statement without any explanation how the subsidiary supposedly used the parent to file this application in the United States Patent and Trademark Office, but it doesn't establish *alter ego*.

It is irrelevant to *alter ego* and *alter ego* has now become the way to get discovery that I do not think they are

entitled to.  That goes way beyond jurisdiction.  That is my argument and that is my objection.  I just want to --

THE COURT:  I understand.

MR. DERVISHI:  -- and preserve it.

THE COURT:  And I appreciate that.

I am actually going to do some more research on it before we actually enter the order, but I am just letting you know signaling I think this makes a difference.

Okay.  We are on --

MR. DERVISHI:  I struck 16.

THE COURT:  Number 16.  Wow.  Okay.

MR. DERVISHI:  It is the same thing, Your Honor.  It goes to *alter ego* arguments.

THE COURT:  Okay.  So we are removing the limitation of Neoreservo and Reserve.

MR. SCHOEB:  We're on 16, Your Honor, or a different one?

THE COURT:  No.  I was just looking to see why 12, 13, and 14 were deleted.  Tell me what is happening there.  I am not sure that it is clear to me from just looking at the redline.

MR. DERVISHI:  In Paragraph 16 or 12?

THE COURT:  No, Paragraphs 12, 13, and 14.

MR. DERVISHI:  I thought 12 and 13 we changed it to three years by agreement and in 14 we removed the Southern

District of Florida.  I mean, by removed, your ruling was Southern District of Florida.

THE COURT:  Oh, I'm sorry.  I went too far.

I scrolled down too far and I started into something else.  I was looking at the jurisdictional questions for production to Defendant Ecotrade.

Okay.  I'm scrolling too far.  Okay.  Paragraph 16, state whether you have -- so we are on Page 4 of the redline?

MR. DERVISHI:  I think we are on Page 3.  We are still in the areas for examination.

THE COURT:  Oh, there we are.  Okay.  Sorry.  Okay.  I was really scrolling too far.

Okay.  Number 16, any royalty, arrangement, or agreements of similar nature by which you receive revenues from Greenway.  Sales originating in the states.

So they are trying to get information regarding royalties from sales in Florida.

Why wouldn't this be relevant?

MR. DERVISHI:  It is the same argument, Your Honor, I have.

THE COURT:  Okay.  We will put this back in.

Okay.  Next we are down to number 18; 2 and 3 is in green.  That means you have agreed to it?  No, because there is still some pink in there.

MR. SCHOEB:  I think 18 they moved to strike it

entirely.  It says the nature of Greenway US LLC's use of the Neoreservo or trademark application.  That's why it's 15.

THE COURT:  Yes.

MR. DERVISHI:  And now they have taken discovery over the proceedings; the agency administrative proceedings regarding the trademarks, Your Honor.

MR. SCHOEB:  I don't know how they are using it.

MR. DERVISHI:  On 18; on 17 and 18 what does that have to do with anything?  A U.S. Patent and Trademark Office proceeding in Washington, D.C. with jurisdiction in Florida.

MR. SCHOEB:  It has to do with the *alter ego*.

THE COURT:  Right.  So explain why the Neoreservo trademark application filed with the United States Patent and Trademark Office is owned by you and you, meaning, Greenway or you meaning Ecotrade?

MR. SCHOEB:  I think in this instance it means Ecotrade.

THE COURT:  Oh, so is it owned by Ecotrade?

MR. DERVISHI:  Ecotrade is the applicant.

MR. SCHOEB:  Yes.

THE COURT:  Oh, okay.  I thought Greenway was an applicant.  I understand.

MR. DERVISHI:  Both 17 and 18 are very problematic. They are trying to take discovery now in an administrative proceeding where they objected and they are participating in

it.  They want to find out about it and argue about it.

In Washington, D.C. they have lawyers and that is where it should be done and not in this court.  They shouldn't be getting discovery in this court.

THE COURT:  Why is this jurisdictional, Mr. Schoeb?

MR. SCHOEB:  Yes, Your Honor.

Because this case is about the Neoreservo trademark application in part and who is the owner of those products if it is actually Ecotrade, or if it is Greenway and Ecotrade it is just the *alter ego* or Greenway is just the *alter ego*.

What I heard Mr. Dervishi say previously, when you asked who the owner of the trademark is, he said the applicant is Ecotrademarket.  That does not fully describe the nature of the entities that may own that trademark or purported trademark.

MR. DERVISHI:  The answer is it has nothing to do with the jurisdiction in Florida.

THE COURT:  I don't think you are going to get the answer.  That's my only problem.  It may be privileged.  I don't know why Ecotrade is filing the application.

MR. SCHOEB:  If that is the answer, ultimately, that's the answer, but I am entitled to ask and get the answer.  If the answer is attorney/client privilege, or something else, I guess I will take it and deal with it as it is, Your Honor.

MR. DERVISHI:  But what does it have to do with

jurisdiction, Your Honor?

THE COURT:  Yeah, that is my question.  What does it have to do with jurisdiction?

I understand that it is the allegation that you are making would be that at the end of the day, Greenway is going to end up somehow owning this and it will flood the Florida market with the product that it is going to harm your client.

I fully understand that, Mr. Schoeb, but I'm having trouble putting this into that jurisdictional --

MR. SCHOEB:  Yes, Your Honor.

Again, I think Ecotrade is filing a trademark application to sell a product in the United States, including in Florida and we are entitled to prove that.

THE COURT:  Yes.

MR. SCHOEB:  And specifically, the contacts with Florida for some of that same profit.

And that this trademark application is part and parcel of their contacts with Florida.  They are actually filing it to sell the product in Florida.

THE COURT:  Well, you may be right.

And that is the merits of your lawsuit, but I think that you will have trouble showing that that is really pure merits that you are requesting there as opposed to -- that's a very good question that you can ask for the merits of your lawsuit.  Like, why are you doing that?

And do you intend to sell these products in Florida? That's a good question. So if the question is do you intend to, once you get this application and file these products in Florida, it is going to be a question that you are going to ask in the deposition of the corporate rep. It is a very good question, but explain why is much more -- I want to say wide open.

MR. SCHOEB: Your Honor, my concern is that if you strike this question, I am not going to be able to ask how they came to own this particular trademark.

And if that was through some sort of contract in the State of Florida with the Florida business. And so the question, itself, is why the application is owned by you. How did you come to own that?

And if that was via negotiations in the State of Florida, or some ultimate contacts with the State of Florida, but that is not merits discovery.

THE COURT: So that is a different question. So you ask how did you come to own this Neoreservo trademark?

MR. SCHOEB: Maybe why was a bad word. Maybe the how is what I should have put there, Your Honor.

MR. DERVISHI: And once they establish jurisdiction -- I'm sorry, Your Honor.

THE COURT: So was the trademark application approved?

MR. SCHOEB: Those proceedings are pending and --

THE COURT:  So it is just an application at this point.  So you are trying to find out, well, why are they filing this and do they intend to sell these products within the State of Florida?

I am trying to understand what the better way is to frame that, Mr. Schoeb.  Maybe there is a better way.

MR. SCHOEB:  I think if I change why to how and explain how it is owned by you is maybe the better way of putting it.

THE COURT:  Okay.

MR. SCHOEB:  That I believe, Your Honor, respectfully, I believe is a question that they can ask once they have established jurisdiction over Ecotrade.

MR. DERVISHI:  That goes to getting contacts with making the contracts that are the basis.  And if the answer is we got it from somebody else that is not in the State of Florida, I live with that answer.

THE COURT:  Yeah.  I mean, the trademark is just an application at this point.  The trademark is not owned by you, is it?

The application filed with the United States with U.S. serial number -- I am just trying to understand this whole question and I just don't think it is working.  It is not working.

MR. DERVISHI:  I think we are far afield of

jurisdiction in Florida and I think we are -- I think Plaintiff is disregarding the limitation on no merits jurisdiction absent order of the Court.

MR. SCHOEB: I don't think I am disregarding anything, respectfully. But, again, Your Honor, the application, if Your Honor would allow me to, may I have until the end of the day to clarify 17 and 18 and present those to the Court and Mr. Dervishi can object and get a ruling on those?

THE COURT: Yes. Because right now I am not seeing your side on this. It looks like you are asking about the merits.

MR. SCHOEB: Understood, Your Honor.

We will clarify those or withdraw them and we will send that to Your Honor and Mr. Dervishi by the end of the day.

THE COURT: Okay. So, then, we are looking at the TK Assets LLC jurisdictional interrogatories.

MR. DERVISHI: And the ones highlighted in green indicate agreement by the Plaintiff with my edits and my objections.

THE COURT: Okay.

MR. DERVISHI: That's the green font.

THE COURT: All right. Rather than go through every single one of these one by one, I think we understand where we are, correct?

It looks like they are all saying -- they are all an

attempt to limit to the marketing or sale of Neoreservo or Reserve.

MR. SCHOEB:  I agree with that.

MR. DERVISHI:  I think so, Your Honor.

THE COURT:  But basically, the activity, the business activities conducted within Florida are relevant to jurisdictional issues.

Even if they are not related to the marketing or sale of Neoreservo or Reserve, which is my general ruling and that would be applicable to all of these.

MR. SCHOEB:  Yes.  The only one that I think -- I'm going to ask Your Honor to do the same clarification, as to 17 and 18, is 24.  If we could have until the end of the day to re-write 24.  That is I think the only other one that we would have an issue with.

THE COURT:  Okay.  For sales generated in Florida for the marketing or sale of Neoreservo or Reserve.

MR. SCHOEB:  I have 24 as identify and describe all Florida assets.

THE COURT:  Right.  I'm looking at it.  I am just looking at the very end as to what --

MR. SCHOEB:  I apologize, Your Honor.

THE COURT:  Identify and describe all Florida assets, including assets purchased by you on your behalf from a Florida company, inventory equipment, and bank accounts held by you, or

any third party on your behalf or sales generated in Florida.

And you would take off for the marketing or sale of Neoreservo.  You simply want to know about the assets in Florida?

MR. SCHOEB:  Yes.  Because other than the assets -- so again general jurisdiction.  But, again, we would like to modify it to see if we can modify it into something that maybe is better stated.

THE COURT:  Okay.  All right.  And so I will allow you to work on that and meet and confer.

Number 25 is agreed to?

MR. SCHOEB:  Yes, ma'am.

THE COURT:  And now we are looking at request for production.  And also the same ruling with regard to taking out any limitations with regard to just this product.

MR. DERVISHI:  There is a request regarding the patent and Trademark Office and the request as well on Page 6, number 12.

THE COURT:  Number 12, Page 6.

MR. DERVISHI:  It's at the bottom of Page 6.

THE COURT:  So I am looking at Page 6.  Which number?

MR. DERVISHI:  12, Your Honor.

THE COURT:  Number 12 I have all -- everything is redlined and I am trying to figure out what it said.  Maybe if I click on it.

MR. SCHOEB: We can read it, Your Honor.

THE COURT: Okay. I can read it if I click on it. It comes up. Hold on.

Application and registration for, intent to use the Neoreserve mark with the United States Patent and Trademark Office including all communications -- okay. So this kind of relates back to the other issue.

MR. SCHOEB: Your Honor, may we take a look at that and get it to you by the end of the day?

THE COURT: Yes.

MR. SCHOEB: Thank you.

MR. DERVISHI: Judge, the following page has a series of requests that, I believe, go to the merits as well.

THE COURT: Page 7?

MR. DERVISHI: Page 7 starting with 13.

And 16 again has another United States Patent and Trademark Office request. So I presume that would be with Mr. Schoeb giving him a second chance for withdrawal.

But I think, you know, all documents relating to the ownership or management or control of Ecotrade and Greenway --

THE COURT: I'm sorry. I am not seeing that.

MR. DERVISHI: 13.

THE COURT: I'm on Page 6.

MR. DERVISHI: Page 7; at the top of Page 7, Paragraph 13.

THE COURT:  It's number 21 on the top of Page 7 that I have.

MR. DERVISHI:  Hmm.

THE COURT:  It starts with 21:

All documents related to any agreements, contracts, or arrangements with third party fulfillment centers.

I am not sure why we are --

MR. DERVISHI:  Well, if you go to request 13 -- and by the way, I mean, there is an issue of you -- there was no definitional page.

And I am going back and scrambling because I understood all of this discovery to be to Ecotrade and there was no definitional page regarding the areas of examination.

The definitional page in one of the discovery requests does not include subsidiaries.  It does in another request.  So I am just raising that issue and I am not exactly sure what I am doing with that issue.

Other than to make clear my objection to adhering to their definitional sections as they were defined and there was no definitional section regarding the areas of examination.

THE COURT:  Okay.  So we need to clarify that.

All right.  I see it is 10:30 and we have been at this since 9:00.  Let's give ourselves a ten-minute break and then we can wrap this up.

Will that be okay with everyone?

MR. DERVISHI:  Yes, Your Honor.

MR. SCHOEB:  Yes, Your Honor.

THE COURT:  Sometimes that a little better so we can sort ourselves out and see if we can come back at 10:40; okay.

MR. DERVISHI:  Thank you, Your Honor.

MR. SCHOEB:  Yes, Your Honor.

THE COURT:  Thank you, everyone.

(Recess.)

THE COURT:  Okay.  We are back.  I think we needed that bit of a break there.

MR. DERVISHI:  Thank you.

THE COURT:  We've got quite a bit of work that we were working on.

All right.  So let me minimize this so I can go back into your documents.

So what you were saying, Mr. Dervishi, is because now we are looking at the requests for production.  Are you saying there was no definitional section with respect to the RFPs or with another section?

MR. DERVISHI:  I will clarify, Your Honor.

There was no definitional section with respect to the areas of examination.

THE COURT:  Oh, okay.

MR. DERVISHI:  The definitional section for the requests for production, interrogatories, and requests for

admissions had very broad definitions.  I think one or two of them explicitly included subsidiaries as well as any entity that is alleged to be an *alter ego*.

So they did request for Greenway to that definitional section.  Even though the discovery is directed to Ecotrade, I dealt with the actual -- in terms of trying to create a meet and confer document for the parties, I just dealt with the discovery request.

I did not address the definitional section.  I object to Greenway being included.  I think Your Honor has ruled on that.  So I just want to make sure I did preserve that objection.  I did not have it in the meet and confer document.

THE COURT:  Okay.

MR. DERVISHI:  But I think it is because, as I said at the beginning -- and this is the last time that I will repeat myself.  Sorry to be so repetitious.

But, you know, general jurisdiction over a parent entity, a question that has been dealt with twice now by the Supreme Court, or a subsidiary, is a very exceptional set of facts and very extraordinary.

And I don't think on these, you know, very limited allegations that it even comes close to meriting this very intrusive discovery.

But I understand and I respect Your Honor's ruling and we will understand --

THE COURT:  And to be clear, my ruling includes only Greenway and not other subsidiaries unless there is some additional evidence, as Mr. Schoeb says he could come back with, that shows some other subsidiaries and *alter ego*.

At this point, you are limiting it to Greenway.

MR. SCHOEB:  Yes.  And Your Honor, I apologize.

There is an inquiry that we have been operating that you includes Greenway.  We had a day to get these done and so that is not an excuse, of course.

But it should have had a definitional section that included Greenway with you and to amend those.

The deadline for the depo, I think, is set for June 2nd.  So there is quite a bit of time before that and so we will amend the definitions.  I apologize about that.

THE COURT:  But let me just say for the corporate representative deposition, that is a little tricky, right?

So I understand your argument is Greenway and Ecotrade are essentially the same entity, but if they are bringing a corporate representative it still may be that the corporate representative, one person cannot answer all -- cannot be the representative of both.  It might be that that is just the case.

MR. DERVISHI:  And if it is, then that's fine.

The one thing I would note that under Florida law, you know, the parent company is charged with knowledge of the

subsidiaries.  So that knowledge, if it is within your subsidiary, the parent company also has the same knowledge.

And so, from my perspective, there are two corporate reps that is fine with me, but I think the knowledge of Greenway would be imputed to the parent company.

THE COURT:  Well, I am not sure what case you are relying upon.

I mean, certainly when I am asking are to when you asked for documents that are within the possession, custody, and control that can mean a subsidiary, but if you are asking for or a corporate -- do you have a specific case where a corporate representative has to be prepared to discuss all of the information regarding its subsidiaries as well?

MR. SCHOEB:  That was my general recollection, Your Honor.  I will take a look and if we have that we will provide those as well.

THE COURT:  Yes.  That might not be the case.  I would be curious to find out if there is such case.

Generally when I have seen that in the past, there will be multiple individuals that there usually is not one individual that will have all of that information.

In many, many companies because a company may have many subsidiaries.  So it may be that he does not have someone at this point and that is a bit of a surprise.

THE COURTROOM DEPUTY:  Your Honor, I am sorry to

interrupt.  Brian Dervishi got kicked out of the Zoom.  He will be rejoining.

THE COURT:  Okay.  He definitely would want to be in on that discussion.

MR. SCHOEB:  Yes.

THE COURT:  So he has to have a corporate representative prepared on a much wider range of information than he may have thought.

Let's see if we can bring him in.

THE COURT:  Are you able to call Mr. Dervishi's office to find out what they are doing?

THE COURTROOM DEPUTY:  Judge, I have him on the phone right now.  His law office doesn't have Internet.  They lost Internet connection.  He will be trying to join by phone.

THE COURT:  Okay.

THE COURTROOM DEPUTY:  I am giving him the information.

THE COURT:  By phone?

THE COURTROOM DEPUTY:  Yes.

THE COURT:  Okay.

THE COURTROOM DEPUTY:  He should be trying to log in now, Judge.

THE COURT:  Okay.

MR. DERVISHI:  Your Honor?

THE COURT:  Yes.

MR. DERVISHI:  I am so sorry.

This is Brian Dervishi and I don't know what happened to our Internet, but I am on by telephone.

THE COURT:  Okay.  I am glad we are at least able to get you by phone.  Unfortunately these things happen.

So I wanted to not go any further right now on the issue regarding the corporate representative deposition until we finish looking at everything here and then I want to talk about that briefly.

MR. DERVISHI:  Okay.

THE COURT:  So I think I have essentially ruled on all of the substantive issues on the discovery.

Even though we haven't gone through every one individually, I think the rulings that I have previously made should resolve those.

My only question is do you agree?

MR. SCHOEB:  I think there is one, two, three, four more, Your Honor.  That's it.  I say that because I know it has been a long day.

THE COURT:  Well, we want to see if we can clean this up.

MR. DERVISHI:  Judge, this is Brian Dervishi.

I just have Paragraph 20 that deals with the request for production is the one that I would like to address.

I think that you have disposed of most of the issues

with your rulings.

THE COURT:  Okay.  So Paragraph 20 on the request for production documents:

All documents relating to Ecotrademarket's revenues, profits, or financial statements effecting sales of any product, including Neoreservo and any product alleged to infringe and Reserve mark originating in Florida.

So you have taken out Defendants and replaced it with --

MR. DERVISHI:  Correct, Your Honor.

THE COURT:  -- Ecotrademarket revenues.  Okay.

MR. DERVISHI:  Right.

THE COURT:  I understand.

MR. DERVISHI:  And I actually understood it to be a typo, but now it looks like it was intentional and I still think -- and I mean, to have revenues, profits, or financial statements produced at this stage of the litigation regarding sales of any product, I am not sure that revenues, or profits, or financial statements -- it is a troublesome request itself (inaudible), but I think it gets to merits as well and I think it is extremely intrusive.

MR. SCHOEB:  Your Honor, if I may?

THE COURT:  Yes.  Mr. Schoeb, I have seen this a lot now on these jurisdictional requests.  And I understand the argument usually is well we would like to know what the

percentage of revenue is from Florida sales in order to make the argument about this continuous and systemic activity, et cetera.

So, then, I say, well, why don't you just ask for the percentage.  And usually the response is, well, can we be expected to believe them?  We just want the whole thing so we can do the math.

MR. SCHOEB:  I mean, we may have.  I have to go back because we have gone back through so much.

THE COURT:  You did ask for the percentage.  I saw it already.

MR. SCHOEB:  But this goes actually, again, to not just general jurisdiction, but also *alter ego*.

We would like to know is the money that flows into Greenway just flowing right to Ecotrademarket.  And if that is the case, then Greenway is just a shell corporation for Ecotrademarket and it is just an *alter ego*.

So it goes back to the *alter ego* allegation that Greenway is acting as its *alter ego* of Ecotrademarket.

THE COURT:  Okay.  So, then, the question is how much of Greenway' profits or revenue flowing into Ecotrade?

MR. SCHOEB:  Yes, ma'am.

THE COURT:  Is that question asked somewhere else? That is very different from all documents relating to Ecotrade's revenues, profits, financial statements.

MR. SCHOEB:  Just give me a moment, Your Honor.  I apologize.

THE COURT:  I mean, I don't blame Plaintiffs lawyers.  They want to put everything in there, but there is a point at which it is --

MR. SCHOEB:  I just do not want to miss something.  I mean, that is the thing.  Then I get yelled at from my client.  Do you know what I mean?

THE COURT:  I understand.

MR. SCHOEB:  Let me see.  I don't --

MR. DERVISHI:  Paragraphs 29 and 30 deal with percentages of revenue.

THE COURT:  Yes.  And that is a fair point.

MR. SCHOEB:  Well, I guess my only concern is that there is not a document with that.  If there is not a document that says that, technically Defendant does not have to create a document.

So if Mr. Dervishi is agreeable to giving us another interrogatory over the 25 for jurisdictional discovery, we will create an interrogatory specific to that question.

MR. DERVISHI:  And if that replaces all of the requests for production directed to that issue, I have no objection depending on the wording that I get and obviously subject to review.

Then I have no objection subject to Your Honor's

ruling that it is relevant and I still preserve my objection that, you know, this pleading, this complaint does not support any inquiries, you know, the broad inquiries into general jurisdiction beyond domicile and incorporation.

MR. SCHOEB:  I am happy to --

MR. DERVISHI:  (Inaudible.)

MR. SCHOEB:  I am happy to try to come to a compromise, but it does not sound like much of a compromise. It is a compromise subject to all these objections.

I will compromise and put 20 with the interrogatory, but if that comes with a caveat of all the objections, I am going to stand on 20 and ask Your Honor to require them to produce all those documents.  If there is no issue, then there is nothing to hide.

THE COURT:  Well, look, I think 20 is excessive and overbroad.  If you want percentages, then I think that 20 can come out and you should ask for percentages.

MR. SCHOEB:  We will create an interrogatory, Your Honor.

THE COURT:  Okay.  What were the others --

MR. SCHOEB:  I think the others were --

THE COURT:  -- that have not been covered?

MR. SCHOEB:  15 and 23.

THE COURT:  Let's see.  If I click on 23 what comes out and what is deleted:

All documents relating to the identity roles and responsibilities of any person or entity involved in the marketing, sale, or distribution of Neoreservo or Reserve in Florida.

Why wouldn't that be relevant?

MR. DERVISHI:  Well, if it relates to people in Florida --

THE COURT:  It relates to marketing, sales, and distribution of that product in Florida.

MR. DERVISHI:  I think that is disposed of by your prior rulings, Your Honor.

THE COURT:  Okay.  All right.

MR. DERVISHI:  And I think that I have to respond to that.

THE COURT:  And then, number 16 was deleted there. Let's see if I click on that.

MR. DERVISHI:  That is a U.S. Patent and Trademark Office.

THE COURT:  Okay.

MR. SCHOEB:  We will take a look at this when we get back to everyone today as with the previous.

THE COURT:  Okay.  I imagine it is all going to be attorney/client privilege.

Okay.  Now so getting back to the issue of corporate rep and your concern was, Mr. Dervishi, that we are just now

discussing the fact that, oh, wait, we are looking for a corporate representative that is going to be answering questions about both Greenway and Ecotrade.

MR. DERVISHI:  Correct, Your Honor.

THE COURT:  And that was not clarified before.

Okay.  My point here, I guess, Mr. Schoeb, that is a much broader range.  I would be very careful in asking those questions that comply with the ruling that I have made so far.

Greenway is only relevant with respect to a more narrow issue of the relationship between the two entities and not everything that Greenway could possibly do.

MR. SCHOEB:  I am picking up what you are putting down, Your Honor.  And I will, of course, work within the bounds of your order.  I would never purposefully violate any order.

So I will take care to do that.  I am sure Mr. Dervishi will tap me if I have a problem, or if I have done something that he feels is inappropriate, but that is certainly not the goal.

THE COURT:  What I would like to do is have you, Mr. Schoeb, prepare a draft order on today's rulings.

MR. SCHOEB:  I will, Your Honor.

THE COURT:  Thank you.

And if you could give that to me within two working days that would be great.  So, what is today?  Monday.  So by

the end of Wednesday.

Mr. Dervishi, I would like to give you an opportunity to -- or give both parties the opportunity to research this issue a little bit now with the perspective of -- because you have given me some very general cases on jurisdiction.

But is there a jurisdictional case that applies to the type of issue we have in this case?

It is a rather unique set of facts where jurisdiction is based on the allegation that there is a Florida company that is an *alter ego* of the foreign company, but there are underlying facts and not just the bear allegation that there is an *alter ego*.

The underlying facts are that this Florida company and the foreign company have worked together to get a trademark for the same product that the Plaintiff or, allegedly, of the same product that the Plaintiff is suing about.

That is why I think it is so unique.  This is not the Goodyear case.  It is not *Dangler*.  It is a little different. I wonder if there are any facts, any cases, that are closer in fact.

And that is what I will give the parties an opportunity to give me any cases on.  Something very brief.  We will look at the cases.  I am talking about something that should not be more than two or three pages.

MR. SCHOEB:  Yes, ma'am.

MR. DERVISHI:  When would you like that, Judge?

THE COURT:  Well, I am hoping that I could get that within the same timeframe as the draft order.  That is why I am not asking for anything too extensive.

MR. DERVISHI:  You've got it, Your Honor.

THE COURT:  And I know, Mr. Dervishi, you don't have any Internet and that might be a problem.

MR. DERVISHI:  I hope to have it back soon, Your Honor.

THE COURT:  So I will give you a little bit of time.

MR. DERVISHI:  Okay.

MR. SCHOEB:  Your Honor, I believe there is one more request for production.  I apologize.  It is number 14 that I don't think that -- I think you have ruled upon this issue, but I don't want an issue later on.

THE COURT:  Okay.  14 on which page?

MR. SCHOEB:  I don't have the page.  I apologize.

THE COURT:  Is it on the RFPs?

MR. DERVISHI:  Is it in the requests for production?

MR. SCHOEB:  Yes.

THE COURT:  Okay.  Number 14.  Let's see.

MR. SCHOEB:  And it is totally crossed out.  So you may have to --

THE COURT:  I may have to click, yes.

MR. SCHOEB:  Yes.

THE COURT:  All documents relating to any payments, transfer of funds, or financial transactions between Ecotrade and Greenway.

MR. SCHOEB:  This is a big one because again.

MR. DERVISHI:  (Inaudible.)

MR. SCHOEB:  *Alter ego*.  So this is obviously very important because of the transfer of funds is just one (inaudible).

THE COURT:  But I think you are asking the question already about documents related to percentage of revenues that are going from Greenway to Ecotrade, correct?

MR. SCHOEB:  I am, but it could be --

THE COURT:  Payments, transfer of funds between Greenway and Ecotrade, or do you think there is money going the other way, too?  Ecotrade to Greenway?

MR. SCHOEB:  Well, I don't know the answer to that because I am not their attorney.

So I don't know how much is going the other way, but outside of revenue there could be other types of money exchanging hands for, like, agreements.

Like a licensing agreement.  For use of property.  For product payments.  There are other funds that could be transferred that I just don't know about.

THE COURT:  Okay.  I will let you respond, Mr. Dervishi.

MR. DERVISHI:  Thank you, Your Honor.

I think it is tremendously intrusive.  Transfers -- and I don't have any knowledge because I have not inquired into this, but transfers of funds between a parent and a subsidiary do not establish *alter ego*.

Under Florida law the Dania Jai Alai cases is the leading case.  They have to show that the one control the other completely dominated it to the extent where the other does not have an existence.

And -- and a big 'and' you have to use it for an improper purpose.

Now I don't know how filing a trademark application in the U.S. Patent and Trademark Office can constitute an improper purpose, but this is really intrusive discovery that I don't think that they are entitled to based on an allegation that Greenway caused Ecotrade or used Ecotrade to file a patent trademark application.

That's the allegation, but even that I don't think it satisfies the requirement on the *alter ego*.  And this *alter ego* is becoming a ruse to be really intrusive on merits based discovery as well and I think it goes way beyond what was contemplated by the jurisdictional order.

And I will try to address that issue when I do the research and provide you with some supplemental authority on this issue on or before Wednesday.

MR. SCHOEB: I think this goes directly to the mere instrumentality argument of *alter ego*.

If all the money and everything is flowing from Greenway right into Ecotrade, then it is just a mere instrumentality of Ecotrade and we will find out during the corporate rep depo what the purpose of that might be.

And if it is to get around potential sanctions by the Federal Government, or whatever else there might be behind that we will learn during the depo, presumably, but we are entitled to know if it is a mere instrumentality and part of that is the financials of it and where it is flowing.

MR. DERVISHI: None of that establishes --

THE COURT: -- entitled to percentage. That's why you are entitled to ask for the percentage of money flowing from the revenues flowing from Greenway to Ecotrade.

My concern is that this is more than that and that at this stage of litigation it is not jurisdictional. It is more damages related.

So I am going to stick to the finding, to the ruling that the percentage of funds moving between the companies is relevant for jurisdiction, but all payments and transactions at this point is not is my thought.

But, again, you are going to have an opportunity to give me some case law on this. I would like to see it before I make a final ruling later this week.

MR. SCHOEB:  Thank you, Your Honor.

MR. DERVISHI:  Thank you, Your Honor.

THE COURT:  Okay.  Thanks.

MR. DERVISHI:  Thank you for your time today.

THE COURT:  You are so welcome.  Very interesting issue.

Mr. Schoeb, if you can prepare that draft you are going to e-mail it, of course, to Mr. Dervishi before you send it to me.

There may be disagreements as to my ruling.  I doubt it.  Even though there are objections rather than actual disagreements on the ruling itself.

The objections that I will deal with anything that you feel that you do not actually agree to on the wording that I ruled on.  That is different.  Just redline that and that is fine.  I will take a look at it, but between myself and my Law Clerk, we are going to take this very seriously and try to give you a ruling before the end of the week.

MR. SCHOEB:  Thank you, Your Honor.

THE COURT:  Okay.

MR. DERVISHI:  Thank you, Your Honor.

THE COURT:  Thank you so much.

MR. DERVISHI:  Thank you.  Bye-bye.

THE COURT:  Court is adjourned.

(Thereupon, the proceedings concluded.)

CERTIFICATE


      I hereby certify that the foregoing transcript is an accurate transcript of the audiotape recorded proceedings in the above-entitled matter.


05/21/26                          Bonnie Joy Lewis,
                          Registered Professional Reporter
                             CASE LAW REPORTING, INC.
                           7001 Southwest 13 Street,
                          Pembroke Pines, Florida 33023
                                954-985-8875